UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

I3 TRIPLE CROWN HOLDINGS,   )
LLC,   )       Case No.
  )   5:19-cv-00057-JMH
     Plaintiff,   )
  )   **MEMORANDUM OPINION**
v.   )   **AND ORDER**
  )
LOWE'S HOME CENTERS, LLC,   )
  )
     Defendant.   )

*** 

This matter is before the Court on the Defendant Lowe's Home
Centers, LLC's ("Lowe's") motion to dismiss or to compel
arbitration. [DE 4]. The instant action is a contractual dispute
between Plaintiff, I3 Triple Crown Holdings, LLC ("Triple Crown")
and Lowe's relating to service contracts whereby Lowe's would
provide repair, demolition, and replacement services to Triple
Crown on two Triple Crown-owned apartment properties in Fayette
County, Kentucky. [DE 1-1].

However, Lowe's claims that the subject contracts provided
that any disputes between Lowe's and Triple Crown be resolved by
binding arbitration. [DE 4]. Accordingly, Lowe's now moves to
dismiss or to compel arbitration or otherwise stay these
proceedings pending the resolution of arbitration pursuant to the
Federal Arbitration Act, 9 U.S.C. §§ 1-16. [*Id.*]. Triple Crown
has responded in opposition to the motion to dismiss [DE 5], and

Lowes has replied in support of its motion. [DE 7]. As a result, this matter is ripe for review and consideration. For the reasons that follow, Lowes's motion [DE 4] is **GRANTED**.

## I. Procedural and Factual Background

Triple Crown owns two apartment complex properties located at 3501 ("3501 location") and 3550 ("3550 location") Pimlico Parkway, Lexington, Kentucky. [DE 1-1 at 2, PageID #7, ¶¶ 5-6]. Between November 2016 and August 2017, Triple Crown entered into at least four Services Solutions Installed Sales Contracts ("the contracts") with Lowe's for the repair of ninety apartment balconies at the 3501 location and the demolition and replacement of sixty-seven apartment balconies at the 3550 location, respectively. [*Id*. at 3, PageID #8, ¶¶ 8-9; *Id*. at 16-7, PageID #19-22].

Triple Crown attached the first page of these contracts to its Complaint. [DE 1-1 at 16-7, PageID #19-22]. Those contracts are form-printed and numbered as follows: 1057679, 0939030, 0939017, 0939017. [*Id*.]. Although Triple Crown only attached the first page of the contracts to the complaint, each is, in fact, three pages long. [DE 4-2 at 17-9, PageID #56-8; DE 4-3 at 2-4, PageID #60-2; DE 4-3 at 5-7, PageID #63-5; DE at 4-3 at 8-10, PageID #66-8].

However, the first page of each of the subject contracts provides a binding arbitration provision. [DE 1-1 at 16-7, PageID

2

#19-22]. The arbitration provision, which is two paragraphs above

the signature line states:

> This Contract provides that all claims by
> Customer or Lowe's will be resolved by BINDING
> ARBITRATION. Customer and Lowe's GIVE UP THE
> RIGHT TO GO TO COURT to enforce this Contract
> (EXCEPT for matters that may be taken to SMALL
> CLAIMS COURT). Lowe's and Customer's rights
> will be determined by a NEUTRAL ARBITRATOR and
> NOT a judge or jury. Lowe's and Customer are
> entitled to a FAIR HEARING. But the
> arbitration procedures are SIMPLER and MORE
> LIMITED THAN RULES APPLICABLE IN COURT.
> Arbitrator decisions are as enforceable as any
> court order and are subject to VERY LIMITED
> REVIEW BY A COURT...

[DE 1-1 at 15-7, PageID #20-2].

The arbitration provision goes on to provide "...FOR MORE

DETAILS: Review the section titled ARBITRATION AGREEMENT, WAIVER

OF JURY TRIAL AND WAIVER OF CLASS ACTION ADJUDICATION found in the

Terms and Conditions of this Contract." [*Id.*].

The referenced section, titled "ARBITRATION AGREEMENT, WAIVER

OF JURY TRIAL AND WAIVER OF CLASS ACTION ADJUDICATION found in the

Terms and Conditions of this Contract" is located on page 3 of the

subject contracts. [DE 4-2 at 19, PageID #58; DE 4-3 at 4, PageID

#62; DE 4-3 at 7, PageID #65; DE at 4-3 at 10, PageID #68].

Notably, immediately below the arbitration provision but above the

signature line on page 1, the contract also provides:

> **DO NOT SIGN THIS CONTRACT UNTIL COMPLETE AND
> YOU HAVE READ THE TERMS AND CONDITIONS
> CONTAINED ON ALL PAGES OF THIS CONTRACT. BY
> SIGNING BELOW, YOU ARE ACKNOWLEDGING THAT YOU**

**HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS SET FORTH ON ALL PAGES OF THIS CONTRACT. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT AT THE TIME OF SIGNATURE.**

[DE 1-1 at 15-7, PageID #20-2] (emphasis in original).

Despite this statement, Triple Crown's representative, Yufang Pang, claims "...at no time was [she] provided nor had any knowledge of, or received any section or provision of those contracts entitled 'Arbitration Agreement, Waiver of Jury Trial, and Waiver of Class Action Adjudication' nor Terms and Conditions beyond the first page of each such contract... ." [DE 5 at 7-8, PageID #76-7]. Regardless, there is no question that Ms. Pang executed the contracts. [*Id.*; *see also* DE 4-2 at 17, PageID #56; DE 4-3 at 2, PageID #60; DE 4-3 at 5, PageID #63; DE at 4-3 at 8, PageID #66].

Later, Triple Crown became dissatisfied with the performance of the contracts, stating they were "not performed in accordance with the inducements, promises, and representations of Lowe's and under 'start-to-finish' project management, completed in a timely fashion, in a good and workmanlike manner, and in accordance with engineering plans, work permits, and all other applicable national, state, and local building codes and laws." [*Id.* at 4, PageID #9, ¶¶ 14-5].

On January 29, 2019, Triple Crown filed the instant action in Fayette Circuit Court, alleging Lowe's breached the subject

contracts.  [*Id*. at 5-6, PageID #10-1, ¶¶ 19-24].  Triple Crown further alleges that Lowe's breached its express warranties on the subject contracts, was negligent in its performance of its contractual obligations, and that Lowe's made false and deceptive advertisements that induced Triple Crown to enter into the contracts.  [*Id*. at 6-9, PageID #11-4, ¶¶ 25-44].  Finally, Triple Crown alleges that Lowe's made negligent misrepresentations to Triple Crown relating to the contracts, [*Id*. at 9-10, PageID #14-5, ¶¶ 45-8], and that Lowe's actions and conduct caused property damage and losses to both properties.  [*Id*. at 10, PageID #15, ¶¶ 49-52].

Lowe's removed the action to this Court, [DE 1], and later filed the instant motion to dismiss to compel arbitration. [DE 4]. Triple Crown responded in opposition to the motion to dismiss or to compel arbitration, claiming the arbitration provisions are procedurally unconscionable and unenforceable.  [DE 5].

## II.  Legal Standard

### A.  Appropriate Standard of Review For Motion to Dismiss or to Compel Arbitration.

Recently, this Court engaged in a detailed discussion about the appropriate standard of review when considering a motion to dismiss or to compel arbitration.  *See FCCI Ins. Co. v. Nicholas Cty. Library*, No. 5:18-cv-038-JMH, 2019 WL 1234319, at *2-5 (E.D. Ky. Mar. 15, 2019).  The Court explained that motions to dismiss

or to compel arbitration are most appropriately construed as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 5.

However, as this Court noted in *FCCI*, the analysis does not end where, as here, the parties have submitted matters outside the pleadings in their briefing on the pending motion to dismiss. *Id.* at 5; *see also*, [DE 4-5, 7]. As a result, the motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). This result is supported by analogous cases in this Court. *FCCI Ins. Co.*, 2019 WL 1234319, at *2-5 (internal citations omitted). As a result, Lowe's motion to dismiss must be considered as a motion for summary judgment under Fed. R. Civ. P. 56.

**B.    Summary Judgment Standard and Applicable Law**

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

### III. Analysis

Lowe's argues that the contracts at issue are subject to binding arbitration provisions. [DE 4-1 at 1, 5, PageID #34, 38]. As a result, Lowe's requests either dismissal or a stay of this action pending arbitration. [*Id.* at 4, PageID #37]. As noted above, Triple Crown argues that the arbitration provision within those contracts are procedurally unconscionable. [DE 5 at 3-5, PageID #72-74]. Because we find that the arbitration agreement in the subject contract is valid and enforceable, we grant summary judgment for Lowe's.

### A. The Federal Arbitration Act.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, a written agreement to arbitrate disputes arising out of a contract or transaction involving interstate commerce shall be "...valid, irrevocable, and enforceable, save upon such grounds as

7

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also*, *Nichols v. Vesta Fire Ins. Corp.*, 56 F. Supp. 2d 778, 781-82 (E.D. Ky. 1999).

Thus, the FAA clearly expresses a strong policy preference favoring arbitration. *See Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010); *see also*, *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)(citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (1985)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This policy was "...designed to override the judicial reluctance to enforce arbitration agreements." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). As a result, when examining such disputes, this Court "...must keep in mind the 'liberal federal policy favoring arbitration agreements.'" *Dawson v. Rent-A-Center, Inc.*, 490 Fed. App'x. 727, 729 (6th Cir. 2012) (*quoting Moses H. Cone,* 460 at 24).

The Sixth Circuit has held "[i]t is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (internal citations and quotations omitted). "If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Id*. (citing *Southland Corp. v. Keating*, 465 U.S. 1, 24, 104 S.Ct. 852, 79

L.Ed.2d 1 (1984); *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir.1993)).

**B.    Motion to Dismiss or to Compel Arbitration.**

When a party invokes the FAA and asks a court to dismiss or stay a case and compel arbitration, the court must determine whether the parties agreed to arbitrate the dispute in issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  This requires the Court to (1) "determine whether the parties agreed to arbitrate[;]" (2) "determine the scope of the agreement[;]" (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable[;]" and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."  *Id.* We address each below in turn.

**1.    The parties agreed to arbitrate.**

Because Lowe's seeks to compel arbitration, [DE 4], this Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).  In Kentucky, "the party seeking to enforce an agreement has the burden of establishing its existence..." *Schnuerle v. Insight Cmmc'ns, Co. L.P.*, 376 S.W.3d 561, 575 (Ky.

2012). Here, the parties agreed to binding arbitration. [DE 1-1 at 14-17, PageID #19-22; DE 4-1 at 1, PageID #34].

The arbitration provisions on page 1 of the subject contracts clearly provides:

> ...all claims by Customer or Lowe's will be resolved by BINDING ARBITRATION. Customer and Lowe's GIVE UP THE RIGHT TO GO TO COURT to enforce this Contract (EXCEPT for matters that may be taken to SMALL CLAIMS COURT)...

[DE 1-1 at 15-7, PageID #20-2] (emphasis in original). The arbitration provision also incorporated additional terms and conditions by reference. [*Id.*]. In particular, it states "...FOR MORE DETAILS: Review the section titled ARBITRATION AGREEMENT, WAIVER OF JURY TRIAL AND WAIVER OF CLASS ACTION ADJUDICATION found in the Terms and Conditions of this Contract." [*Id.*].

Triple Crown executed the contracts on the signature line located just below these sections on page 1. [*Id.*; *see also* DE 4-2 at 17, PageID #56; DE 4-3 at 2, PageID #60; DE 4-3 at 5, PageID #63; DE at 4-3 at 8, PageID #66]. "A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Schnuerle*, 376 S.W.3d at 576. It is also well-established Kentucky law that "...one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions..." *Hathaway v. Eckerle*, 336 S.W.3d

83, 89-90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky.1959)).

Triple Crown does not dispute that it agreed to the provisions on page 1 of the contract. In fact, Triple Crown states only that it did not agree to any of the terms "...beyond the first page[.]" [DE 5 at 2-3, PageID #71-2]. This is nothing less than a concession that it did, in fact, agree to the arbitration provision on page 1 of the subject contracts. Thus, as Lowe's correctly argues, [DE 7 at 3, PageID #95], the parties agreed to arbitrate. [DE 1-1 at 15-7, PageID #19-22; DE 5 at 7, PageID #76-7, ¶ 4]. But our inquiry does not end here because Triple Crown argues that the arbitration provision is procedurally unconscionable and unenforceable. [DE 5].

## 2. The arbitration provision is not procedurally unconscionable.

Triple Crown first argues that the arbitration provision is *per se* procedurally unconscionable because the subject contracts are adhesion contracts. [*Id*. at 2-4, PageID #71-3]. Next, Triple Crown argues that it did not agree to the "Terms and Conditions" laid out on pages 2 and 3 of the contracts. [DE 5]. In particular, Triple Crown claims it had no opportunity to read, let alone agree to, the arbitration provision's incorporated "Terms and Conditions." [*Id*. at 4-5, PageID #73-4]. Thus, Triple Crown

argues, renders the contract procedurally unconscionable and unenforceable. [*Id.*] We disagree.

As Triple Crown correctly notes, "[a]rbitration cannot be forced upon parties who do not consent to it." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1015 (6th Cir. 2003); *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating that "the FAA does not require parties to arbitrate when they have not agreed to do so"). (other citations omitted).

Even arbitration agreements subject to the FAA are subject to generally applicable state law contract defenses. *See* 9 U.S.C. § 2. Indeed, the "saving clause" of the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-42 (2011) (stating "...the savings clause preserves generally applicable contract defenses..."). The state law defense must pertain to contracts generally and not be intentionally hostile to arbitration, as would be inconsistent with the purpose of the FAA. *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987)). If no such defenses apply, an arbitration clause is generally enforceable under the FAA. *Stutler*, 448 F.3d at 345.

However, "[t]he party seeking to avoid [an] arbitration agreement has a heavy burden." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (internal citation omitted). As a result, this Court must "...begin our review with a strong presumption that the arbitration clause is not unconscionable." *Schnuerle*, 376 S.W.3d at 575.

### a. Procedural unconscionability.

In Kentucky, the doctrine of procedural unconscionability is "one of the grounds upon which any contract may be revoked." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W. 3d 828, 835 (Ky. 2013) (citing *Concepcion*, 563 U.S. at 341-42 (other citations omitted)). Under Kentucky contract law, "[a]n unconscionable contract is a contract which no man in his sense, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Forsythe v. BancBoston Mortgage Corp.*, 135 F.3d 1069, 1074 (6th Cir. 1997) (citing *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (1978)). However, the doctrine "forbids only one-sided, oppressive, and unfairly surprising contracts, and not mere bad bargains." *Id.* (internal citations omitted). As such, the doctrine is used only in rare instances. *Forsythe*, 135 F.3d at 1074 (internal citations omitted).

"Procedural or 'unfair surprise' unconscionability 'pertains to the process by which an agreement is reached and the form of an

13

agreement, including the use therein of fine print and convoluted or unclear language.'" *Schnuerle*, 376 S.W.3d at 576 (internal citations omitted). Factors relevant to a procedural unconscionability inquiry include (1) the bargaining power of the parties, (2) the conspicuousness and comprehensibility of the contract language, (3) the oppressiveness of the terms, (4) the absence of a meaningful choice. *Schnuerle*, 376 S.W.3d 561 at 576 (internal citations omitted). It includes, for example, "the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Energy Home*, 406 S.W.3d at 835 (citing *Schneurle*, 376 S.W.3d at 576-77).

### b. Arbitration provisions in adhesion contracts are not *per se* procedurally unconscionable.

Triple Crown first argues the provision is procedurally unconscionable because it is contained in a non-negotiable, take-it-or-leave-it, adhesion contract. [DE 5 at 2-4, PageID #71-3]. Lowe's denies that the contract is an adhesion contract, but argues that, even if it were, such contracts are not *per se* improper. [DE 7 at 8, PageID #100]. We agree with Lowe's.

"A contract of adhesion is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party on the opportunity to adhere to the contract or reject it." *Schnuerle*, 376 S.W.3d at 576 (internal citations and quotations omitted). It is also true that

14

"[a]dhesion contracts are subject to abuse and oppressive terms, ancillary to the main bargain can be concealed in fine print and couched in vague or obscure contractual language[,]" non-obvious to the lay reviewer and not subject to potential negotiation or modification. *Id.* Courts are particularly wary of such terms in consumer contracts. *Id.*

In the instant case, it is not clear whether the subject contracts are, in fact, adhesion contracts. The subject contracts were undoubtedly standardized. [DE 4-2 at 17-19, PageID #56-8; DE 4-3 at 2-4, PageID #60-2; DE 4-3 at 5-7, PageID #63-5; DE at 4-3 at 8-10, PageID #66-8]. As Triple Crown correctly notes, the subject contracts were executed on a pre-printed Lowe's form entitled "Services Solutions Installed Sales Contract." [DE 1-1 at 14-7, PageID #19-22].

Triple Crown also complains that it had no opportunity to negotiate the arbitration provision on page 1, because it was part of a take-it-or-leave-it contract. [DE 5 at 4-5, PageID #73-4]. However, Triple Crown has not demonstrated it ever attempted to negotiate the arbitration provision. In fact, until Lowe's filed the instant motion, there has been no indication that Triple Crown ever objected to the terms of the arbitration provision on page 1.

Regardless, it is unnecessary to engage in further analysis because, as Lowe's points out, courts have rejected Triple Crown's argument. *Schnuerle*, 376 S.W.3d at 576 (stating "adhesion

contracts are not *per se* improper"); *see also*, *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 788 (E.D. Ky. 2014). In *Schnuerle*, the Kentucky Supreme Court has held that non-negotiable, take-it-or-leave-it, contracts containing an arbitration agreement are not *per se* procedurally unconscionable. *Schnuerle*, 376 S.W.3d at 576. Thus, we decline to hold the arbitration agreement *per se* procedurally unconscionable.

### c. The arbitration provision is not procedurally unconscionable.

Triple Crown next argues the arbitration provision is procedurally unconscionable because Lowe's did not provide Ms. Pang pages 2 and 3 of the contracts, which included the "Terms and Conditions" referred to in the arbitration provision on page one, before signing the contracts. [DE 5 at 2-5, PageID #71-4]. As such, Triple Crown claims that it did not have opportunity to read the contract terms on those pages, much less the bargaining power to negotiate them, prior to executing the contracts. [*Id.*].

Lowe's argues that it provided Ms. Pang and Triple Crown "...with the entirety of each of the...contracts, including the terms and conditions..." [DE 7 at 2, PageID #94]. Regardless of this factual dispute, Lowe's contends that the terms of the arbitration agreement were "clearly set forth both in the body of the first page of the contract and in the Terms and Conditions... [,]" and that Terms and Conditions were incorporated by reference.

16

[*Id*. at 4, PageID #96]. As a result, Lowe's argues that Triple
Crown, as a sophisticated entity, knew or should have known about
the incorporation of the Terms and Conditions. [*Id*. at 10, PageID
#102]. Thus, Lowe's maintains that the arbitration agreement is
not procedurally unconscionable. We agree.

As noted above, a person who signs a contract is presumed to
know its contents, and if he or she has had an opportunity to read
the contract, he or she will be bound by its provisions. *See
Hathaway*, 336 S.W.3d at 89-90. While the law is clear that "[a]n
undisclosed arbitration agreement or one hidden in an undisclosed
terms-and-conditions package cannot bind... [,]" Triple Crown, the
law is equally clear that Triple Crown "...cannot be excused from
complying with the arbitration provision if it simply failed
properly to read the contract." *Inland Bulk Transfer Co.*, 332 F.3d
at 1016; *see also, Hathaway*, 336 S.W.3d at 89-90.

Here, Triple Crown is bound by the agreement to arbitrate all
disputes arising under the subject contracts. The arbitration
provision was undoubtedly disclosed to Triple Crown. The provision
itself was conspicuous as were all the important terms of the
provision. *Hathaway*, 336 S.W.3d at 89-90.

Triple Crown is correct that the language of the arbitration
provision is, indeed, "boilerplate." [DE 5 at 3, PageID #72].
However, like in both *Schnuerle* and *Brookdale*, the general
arbitration provision "...was not concealed or disguised."

*Schnuerle*, 376 S.W.3d at 576; *Brookdale Sr. Living Inc.*, 27 F. Supp. 3d at 788. Rather, the arbitration provision was clearly set out on the first page of each of the subject contracts. [DE 1-1 at 15-7, PageID #20-2]. It was "...contained within its own subsection of the contract...[,]" only two paragraphs above the signature line on page 1. *Schnuerle*, 376 S.W.3d at 576. Thus, the arbitration provision itself was not "undisclosed" or "hidden." *Inland Bulk Transfer Co.*, 332 F.3d at 1016.

In addition, the general arbitration provision on page 1 "...made conspicuous all the important terms – such as emphasizing within the text that the parties were agreeing to forgo any trial by jury and submit their claims." *Brookdale Sr. Living Inc.*, 27 F. Supp. 3d at 788-89. The language of the arbitration provision provides, among other things, that all claims would be resolved by binding arbitration, that both parties gave up the right to go to court to enforce the contract, and that their rights would be decided by a neutral arbitrator. [DE 1-1 at 15-7, PageID #20-2]. These terms, which set forth above, are neither convoluted or unclear. *Energy Home*, 506 S.W.3d at 835. Nor is there any dispute that Triple Crown received, reviewed, and subsequently signed page 1 of the contract. [DE 5 at 7-8, PageID #76-7].

The Court is also unpersuaded by Triple Crown's argument that it had no notice and no opportunity to read or negotiate the Terms and Conditions on pages 2 and 3 of the subject contracts. [*Id.* at

4-5, PageID #73-4].  In Kentucky, "[i]ncorporation by reference is [a] historic common-law doctrine." *Dixon v. Daymar Colleges Group, LLC*, 483 S.W.3d 332, 344 (Ky. 2015).  Under the doctrine, "[f]or a contract validly to incorporate other terms, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *Id.* (quoting 11 WILLISTON ON CONTRACTS § 30.25 (4th ed.2014)).  Moreover, "there must be clear language expressing the incorporation of other terms and conditions." *Id.* (quoting *Bartelt Aviation*, 682 S.W.2d at 797)).  If these conditions are met and a signature follows afterward, "it is the logical inference that the signer agrees to be bound by everything incorporated." *Id.* (quoting *Bartelt Aviation*, 682 S.W.2d at 797)(stating "when a signature is placed after clear language has expressed the incorporation of other terms and conditions by reference, it is a logical inference that the signer agrees to be bound by everything incorporated.") (internal quotations omitted)).

Here, the arbitration provision on page 1 clearly incorporated the Terms and Conditions on pages 2 and 3 by reference. As shown above, the arbitration provision at issue explicitly mentions that the contract has additional pages, which include "Terms and Conditions" not found on page 1.  [DE 1-1 at 15-7, PageID #20-2].  It provides "...FOR MORE DETAILS: Review the section titled ARBITRATION AGREEMENT, WAIVER OF JURY TRIAL AND

WAIVER OF CLASS ACTION ADJUDICATION found in the Terms and Conditions of this Contract." [Id.] (emphasis in original). This language is clear and put Triple Crown on notice that the contract had additional information related to the arbitration provision. *Dixon*, 483 S.W.3d at 344. Thus, we find that the arbitration provision on page 1 incorporated by reference the terms and conditions on pages 2 and 3 of the contract.

Moreover, other provisions on page 1 also put Triple Crown on notice that the contract was more than one page and contained additional terms. [*Id*.]. In fact, the contract explicitly directed Triple Crown, in bold black letters, not to sign the agreement until it had "...**READ THE TERMS AND CONDITIONS CONTAINED ON ALL PAGES OF THIS CONTRACT... .**" [DE 1-1 at 15-7, PageID #20-2] (emphasis in original). Notably, just above this section, the contract explicitly directs Triple Crown not to sign the agreement until she had "...**READ THE TERMS AND CONDITIONS CONTAINED ON ALL PAGES OF THIS CONTRACT...**[,]" and further that "**[B]Y SIGNING BELOW, YOU ARE ACKNOWLEDGING THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS SET FORTH ON ALL PAGES OF THIS CONTRACT. ENTITLED TO A COPY OF THIS CONTRACT AT THE TIME OF SIGNATURE.**" [*Id.*]

Triple Crown's execution of page 1 demonstrates its knowledge and assent to the general arbitration provision. The general arbitration provision on page 1 clearly incorporates by reference

the Terms and Conditions on pages 2 and 3 of the subject contracts. Thus, Triple Crown knew or should have known there were additional terms and conditions in the contract relating to the general arbitration provision. Triple Crown has offered no indication that it ever inquired as to the additional Terms and Conditions incorporated by reference in the arbitration provision, let alone that it requested the additional pages, or that Lowe's refused such a request. Despite this, Triple Crown chose to execute the contracts anyway.

As a result, we find no merit in Triple Crown's claim that it did not know about or have opportunity to read the contract terms on those pages. In sum, we do not find that Terms and Conditions were "hidden" or "undisclosed," *Schnuerle*, 376 S.W.3d at 576, and the Court will not excuse Triple Crown from complying with the arbitration provision because it failed to inquire as to the incorporated Terms and Conditions. *Inland Bulk Transfer Co.*, 332 F.3d at 1016.

Nor do we find merit in Triple Crown's passing mention of its "lack of...bargaining power..." as a basis for invalidating the arbitration provision. [DE 5 at 4, PageID #73]. There is little doubt that Triple Crown "...is a sophisticated entity, rather than an unwitting consumer[,]" and regularly engages in these sorts of transactions. *See CK Franchising, Inc. v. SAS Services Inc.*, No. 6:18-cv-94, 2019 WL 3006546, at *8 (E.D. Ky. July 10, 2019).

However, even if the parties had uneven bargaining power, that is "...insufficient in and of itself to establish unconscionability." *Preferred Care, Inc. v. Aaron*, No. 16-cv-285, 2017 WL 3319378, at *9 (E.D. Ky. Aug. 3, 2017) (citing *Schnuerle*, 376 S.W.3d at 575 (unconscionability is not directed "against the consequences *per se* of uneven bargaining power")). As such, we find the arbitration agreement is not procedurally unconscionable.

### 3. The scope of the arbitration agreement.

In analyzing the scope of the agreement, the Court acknowledges the well-established rule that "doubts regarding arbitrability must be resolved in favor of arbitration." *Fazio*, 340 F.3d at 386 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*). The claims at issue here fit squarely within the parties' agreement.

Triple Crown's state law claims against Lowe's include claims for two claims of breach of contract, two claims of breach of express warranty, two claims of false and deceptive advertising, two claims of negligent misrepresentation, and two claims of property damage. [DE 1-1 at 5-13, PageID #10-8]. The arbitration provision in the subject contracts provides that "...all claims by Customer or Lowe's will be resolved by BINDING ARBITRATION. Customer and Lowe's GIVE UP THE RIGHT TO GO TO COURT to enforce this Contract (EXCEPT for matters that may be taken to SMALL CLAIMS

COURT)..." [*Id*. at 15-7, PageID #20-2] (emphasis in original). Thus, the scope of the agreement covers all the claims at issue.

**4. No federal statutory claims asserted.**

As mentioned above, Triple Crown asserts only state law claims, not federal claims. Since there are no federal law claims at issue, the Court need not consider whether Congress intended them to be arbitrable.

**5. All Triple Crown's claims are subject to arbitration.**

As explained above, all of Triple Crown's claims are arbitrable claims. Hence there are no non-arbitrable claims for the Court to consider.

**IV. CONCLUSION**

Here, the Court concludes that the parties executed an arbitration agreement. That agreement is not unconscionable, and plainly requires the arbitration of the claims asserted in Triple Crown's complaint. Triple Crown has not asserted any federal statutory claims. Thus, all the claims in this action are subject to arbitration. For the reasons set forth above, and with the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1) That Defendant Lowe's motion to dismiss or to compel arbitration [DE 4] is construed as a motion for summary judgment;

2) That Defendant Lowe's motion is [DE 4] is, and hereby **SHALL** be, **GRANTED;**

3) Summary Judgment is granted in favor of Lowe's in the narrow sense that Triple Crown is required to submit its claims to the arbitrator;

4) This action is **DISMISSED WITHOUT** PREJUDICE; and

5) Judgment consistent with this opinion will be entered contemporaneously herewith.

This the 24th day of July, 2019.

**Signed By:**

***Joseph M. Hood***

**Senior U.S. District Judge**